UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH S.,[1]

                Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

DECISION AND ORDER

24-CV-0166-MAV

---

## INTRODUCTION

In February 2024, Joseph S. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 15 (Plaintiff); ECF No. 18 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 15] is denied. The Commissioner's motion [ECF No. 18] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

## I. Plaintiff's Applications

Plaintiff filed his application for DIB in February 2021, alleging a disability onset date of January 4, 2021. Administrative Record ("AR"), 67,[2] ECF No. 5. He identified several physical and mental conditions that he claimed limited his ability to work, including: aortic dissection, hypertension, dysthymic disorder, insomnia, major depressive disorder, anxiety, cardiac arrhythmia, restless legs syndrome, arthritis, and conduction disorder of the heart. AR at 252. In June 2021, the Commissioner found that Plaintiff was "not disabled," and his claim for DIB was denied. AR at 67–82. Plaintiff requested a reconsideration of the initial determination, and in October 2021 was again found "not disabled." AR at 83–102.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his application at the initial level and on reconsideration, Plaintiff appeared with counsel via video conference on January 25, 2023 for a hearing before an Administrative Law Judge ("ALJ"). AR at 32. Prior to the hearing, Plaintiff's counsel submitted a brief which summarized much of the testimony that Plaintiff would give at the hearing:

> [Plaintiff] has two years of college and a relevant work history, for disability purposes, as a finance manager for a medical office from 1997 through 2015, and occasional work as a staff accountant and line cook since then. He has not worked since 2019. However, it should be noted that [Plaintiff] worked consistently from 1978 through 2016 and sporadically after that, giving him a nearly forty-year work history.
>
> [Plaintiff]'s primary impairments consist of an aortic dissection occurring in January 2021 for which he underwent surgery consisting of an aortic valve replacement and aortic aneurysm repair . . . . Although

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

> relatively stable since the surgery, [Plaintiff] still has complaints of shortness of breath and dizziness, episodic.
>
> [Plaintiff] has been evaluated for periodic memory loss, . . . . [and] has also been under the care of Niagara County Adult Mental Health since at least 2020, partially for a previous diagnosis of alcohol dependence, currently in sustained remission, but with evidence of anxiety and depression, perhaps related to his physical condition, but which is currently relatively well-controlled.
>
> . . . .
>
> . . . [E]ven if it were found that from a physical standpoint [Plaintiff] could perform sedentary work, he would be unable to maintain the level of concentration and focus necessary to perform the highly skilled and stressful work that his previous employment demanded, and, given his advanced age, he would be unable to perform any type of work in the national economy . . . .

AR. 319–20.

At the hearing, Plaintiff testified that his depression causes him to "just lay around all day," and that the medication he takes for his high blood pressure makes him tired. AR at 52–53. He also stated that he has four or five "bad days" each week, during which he can't do laundry or dishes, and "basically [spends the day] laying down watching TV because [he] can't do anything." AR at 57.

The ALJ also heard testimony from Vocational Expert Elizabeth LaFlamme (the "VE"), who testified that a hypothetical claimant with an RFC identical to that which the ALJ ultimately found Plaintiff to have would be capable of Plaintiff's past job as a data entry operator. AR at 62–63.

### III. The ALJ's Decision

On February 15, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 25.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through June 30, 2022, and had not engaged in substantial gainful activity between his alleged onset date of January 4, 2021 and his date last insured. AR at 17–18. Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ determined that Plaintiff had two severe impairments: aortic valve disorder, and essential hypertension. AR at 18. Further, after consideration of the record and the application of the "special technique" for evaluating mental impairments in 20 C.F.R. § 404.1520a, she found that Plaintiff had multiple non-severe impairments, including alcohol abuse, insomnia, and anxiety. AR at 18–19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 20. Then, before proceeding to step four, the ALJ determined that Plaintiff had the

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

residual functional capacity[5] ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except Plaintiff could never climb ladders, ropes, or scaffolds; and only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. AR at 20–24. Plaintiff's RFC also included the restrictions of avoiding concentrated exposure to extreme cold, extreme heat, and humidity; and of avoiding work around unprotected heights and dangerous machinery. AR at 20–24. At step four, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that Plaintiff was capable of performing his past relevant work as a data entry operator. AR at 24–25. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 25.

January 25, 2025, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

---

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In his motion for judgment on the pleadings, Plaintiff presents several challenges to the ALJ's decision. ECF No. 15-1. With respect to the ALJ's finding at step two that Plaintiff's mental impairment of anxiety was non-severe, Plaintiff maintains that the finding was not supported by substantial evidence, and was based in part on the ALJ's lay opinion about Plaintiff's ability to maintain concentration and pace. ECF No. 15-1 at 4–5. In addition, Plaintiff argues that the ALJ did not accord proper weight to Plaintiff's long and steady work history, and that the ALJ improperly suggested that a failure to object to the qualifications of the VE precludes a claimant's attorney from objecting to the VE's testimony regarding job classifications. AR at 5–6. For the reasons that follow, the Court finds that Plaintiff's arguments are without merit.

I. The Severity of Plaintiff's Anxiety

As indicated above, at step two of her decision, the ALJ applied the "special

technique" for the evaluation of mental impairments set forth in 20 C.F.R. § 404.1520a, and concluded that Plaintiff's mental impairment of anxiety was non-severe. Plaintiff argues that this conclusion was not supported by substantial evidence, and was based on the ALJ's lay opinion.

**A. Legal Principles**

At step two of the Commissioner's five-step sequential analysis, the ALJ must determine first whether the claimant has any medically determinable physical or mental impairments, and then consider the severity of those impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. A physical or mental impairment is a "medically determinable impairment" if it can be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A medically determinable impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

In order to assess the severity of mental impairments for adults, 20 C.F.R. § 404.1520a requires the ALJ to follow a "special technique" and document it in her decision. In addition to determining whether the claimant has a "medically determinable" mental impairment, the ALJ must rate the degree of the claimant's functional limitation resulting from that impairment in four broad areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c). If the ALJ rates the claimant's degree of limitation as "none" or "mild," she may generally conclude that the impairment is not severe, unless the evidence otherwise indicates there is more than a minimal limitation in the ability to do basic

work activities. 20 C.F.R. § 404.1520a(d)(1). On the other hand, if the ALJ finds the impairment is severe, then she must proceed to determine if it meets or exceeds in severity a listed mental disorder, and if not, must assess how it impacts the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(2)–(3).

Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Theodore C. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06482 EAW, 2022 WL 600840, at *3 (W.D.N.Y. Mar. 1, 2022) (quoting, *inter alia, Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). If the ALJ's assessment of the medical evidence shows that an impairment or combination of impairments does not "significantly limit" the claimant's physical or mental ability to do basic work activities, then the ALJ must find the impairment to be "not severe." 20 C.F.R. § 404.1522(a). "It is the claimant's burden to present evidence demonstrating severity at step two." *David Q. v. Comm'r of Soc. Sec.*, No. 20-CV-1207-MWP, 2022 WL 806628, at *3 (W.D.N.Y. Mar. 17, 2022); *see also* 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled.").

## B. The ALJ's Findings

In considering at step two whether Plaintiff's mental impairments were severe, the ALJ in the present case performed the "special technique" outlined in 20 C.F.R. § 404.1520a. First, consistent with 20 C.F.R. § 404.1520a(b)(1), the ALJ evaluated Plaintiff's "pertinent symptoms, signs, and laboratory findings," and determined that

9

he had the medically determinable mental impairment of anxiety. AR at 18. Then, based on an evaluation of Plaintiff's degree of limitation in the four areas of mental functioning identified in 20 C.F.R. § 404.1520a(c),[6] the ALJ found that Plaintiff's mental impairments did "not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore non-severe." AR at 18.

In particular, the ALJ found no limitation in the functional area of understanding, remembering, or applying information. AR at 19. She noted that Plaintiff's mental status exams from his mental health treatment provider indicated normal thought processes and content, with no psychosis. *Id.* (citing AR at 1410–11, 1436–38). Further, the ALJ observed that despite Plaintiff's allegation of memory problems in the functional report he submitted with his application (AR at 267), exams by both his treatment provider and the consultative examiner, Susan Santarpia, Ph.D., revealed that "cognition appeared normal with estimated average intelligence and no memory problems across several exams." AR at 19 (citing AR at 1411–12, 1162). Although objective evidence from brain imaging in June 2022 showed changes consistent with old cerebral microhemorrhages, there was no evidence in the record of cognitive deficit or memory issues. AR at 19 (citing AR at 2252).

The ALJ also found that Plaintiff had no limitation in the functional area of interacting with others. AR at 19. She pointed out that Plaintiff reported that he was supported by friends and family, was in a romantic relationship, and had no history

---

[6] The four broad functional areas in which the ALJ rates the degree of a claimant's mental functional limitations under 20 C.F.R. § 404.1520a are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

10

of anger issues, violent or anti-social behavior, or communication problems. AR at 19 (citing AR at 1375–76, 1383, 1388–89). Plaintiff's mood was "consistently euthymic on exam." AR at 19 (citing AR at 1161, 1410, 1439).

Next, the ALJ found that Plaintiff had no limitation in the functional area of concentrating, persisting or maintaining pace. AR at 19. Plaintiff reported in his application materials that he had problems concentrating (AR at 267), but the ALJ noted that a mental status exam in April 2022 showed intact recall, the ability to spell "world" forward and backward, and that he could perform basic calculations. AR at 19 (citing AR at 2047). The ALJ also referenced Plaintiff's normal performance on "serial 7s" in Dr. Santarpia's consultative exam in May 2021. AR at 19 (citing 1162). The ALJ found no evidence in the record of any difficulties with concentration "from a psychological standpoint," and stated that while Plaintiff "may have had some problems with pace due to his cardiovascular symptoms since his heart surgery," he had no limitation in that area "from a mental health perspective." AR at 19.

Lastly, the ALJ found that Plaintiff had a "mild limitation" in the functional area of adapting or managing oneself. The ALJ observed that Plaintiff was inconsistent with his medications (Lexapro, AR at 1186, 1245), met the diagnostic criteria for anxiety disorder (AR at 1363), reported anxiety in part due to adjustments to his post-heart surgery limitations (AR at 1370), and had poor sleep habits (AR at 1427–28). However, the ALJ also noted that Plaintiff's sleep issues were self-imposed (*Id.*), that he reported that he handled stress "fairly well" (AR at 268), that there was no evidence of mood instability or abnormality, and that his insight and judgment were intact (AR at 1392, 1410–12, and 1438).

11

### C. The Evidence Supporting the ALJ's Decision

Plaintiff argues that the ALJ's assessment of Plaintiff's functional limitation in the area of concentrating, persisting, or maintaining pace was not based on substantial evidence and that it relied upon the ALJ's lay opinion. ECF No. 15-1 at 4–5. Specifically, Plaintiff takes issue with the ALJ's statement that "while [Plaintiff] may have had some problems with pace due to his cardiovascular symptoms since his heart surgery, namely fatigue, from a mental health perspective [Plaintiff] had no limitation in this area." *Id.* (quoting AR at 19). The Court disagrees.

To be sure, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotations and citations omitted). Nevertheless, the regulations make clear that the Commissioner – and not the claimant's medical sources – is responsible for making the determination or decision about whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(3). Thus, it is up to the Commissioner to weigh the conflicting evidence in the record. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). In that regard, under the regulations applicable to Plaintiff's claim, the Commissioner owes no special deference to any particular medical opinion in the record, and his findings need not match any single opinion so long as it is supported by substantial evidence. *See, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (referencing 20 C.F.R. § 404.1520c).

In the present case, the decision shows that the ALJ was not "playing doctor" in the evaluation of Plaintiff's ability to concentrate, persist or maintain pace. Rather, the ALJ weighed the conflicting evidence in the record and reasonably resolved that conflict based on criteria set forth in the regulations. 20 C.F.R. § 404.1520a(c)(3) identifies four areas of mental functioning in which an ALJ must rate the degree of the claimant's functional limitation, and points the ALJ to the definitions of these areas in Section 12.00E of the Listings. Section 12.00E(3) sets forth the definition of the functional area "[c]oncentrate, persist, or maintain pace," and gives examples:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E(3).

In finding that Plaintiff had no limitation in this area, the ALJ examined the record for suggestions that Plaintiff could focus attention and stay on task, and found "no evidence . . . in the record indicating [Plaintiff] had limitations or difficulties with concentration . . . ." AR at 19. She cited Plaintiff's 2021 consultative exam, in which Dr. Santarpia assessed "intact" concentration and attention based on Plaintiff's ability to do mathematical calculations and perform serial 7s (citing AR at 1162). She also cited Plaintiff's mental status exam prior to his brain MRI in April 2022, which found Plaintiff had intact recall, was alert and oriented to person, place and situation,

and could spell correctly backward and forward (citing AR 2047).

Later, in her discussion of the opinion evidence, the ALJ also addressed the only potential evidence that Plaintiff had any limitation in this area: she found that Plaintiff's treating psychiatrist's opinion that Plaintiff had difficulties in concentration, persistence, and task completion were inconsistent with both the rest of the record and the psychiatrist's own treatment notes, which showed "no significant abnormalities on mental status exams." AR at 24 (citing unremarkable mental status exams at AR 1409–12, 1436–39, and 1569–72). By contrast, the ALJ's decision discussed evidence of Plaintiff's fatigue due to his physical impairments, such as reports to the cardiac clinic that "he has been fatigued since his aortic repair in January 2021 and that has not improved at all," as well as of "tiring easily" (AR 23 citing AR 1336–37 (August 2021), 1965 (March 2022)).

In short, in finding at step two that Plaintiff's mental impairments were not severe, the ALJ applied the proper legal standard (the special technique in 20 C.F.R. § 404.1520a), supported her conclusion with substantial medical evidence, and did not rely upon her own lay opinion. *See, e.g., Ronald S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1688-DB, 2022 WL 3716568, at *14–16 (W.D.N.Y. Aug. 29, 2022) (holding the ALJ's step two finding was based on substantial evidence and not lay opinion where, among other things, the plaintiff's treatment records revealed largely normal mental status examinations and normal mood).

## II. Plaintiff's Other Arguments

In addition to taking issue with the ALJ's step two findings, Plaintiff makes two other arguments: (1) that the ALJ did not properly consider his work history;

14

and, (2) that the ALJ erroneously suggested a claimant's failure to object to a VE's qualifications precludes the claimant from objecting to the VE's testimony regarding the claimant's specific job classifications. ECF No. 15-1 at 5–6. These arguments are also without merit.

Plaintiff maintains that the ALJ did not adequately address his argument in a pre-hearing submission that "an individual with an extensive work history who claims at the end of that that he can no longer work, should be entitled to particular credibility." ECF No. 15-1 at 5–6; AR at 320. Contrary to Plaintiff's argument, however, the ALJ did directly address work history, noting that Plaintiff "had a strong work history in financial-related positions for many years prior to the alleged onset of disability." AR at 22. Yet the ALJ also pointed out that according to Plaintiff, he stopped working in this field for reasons other than the onset of disability. AR at 23. More importantly, the ALJ declined to find that Plaintiff's strong work history outweighed the medical evidence related to his physical and mental impairments during the relevant period. *Id.* This was not error. *See, e.g., Thomas H. v. Comm'r of Soc. Sec.*, 675 F. Supp. 3d 330, 339 (W.D.N.Y. 2023) (finding that the ALJ adequately considered the plaintiff's work history where the ALJ acknowledged the work history, but found "he could perform work consistent with the limitations included in the RFC.").

Finally, the Court disagrees with Plaintiff's interpretation of the ALJ's footnote regarding the VE. At Plaintiff's hearing before the ALJ, the VE classified three different jobs based on questions Plaintiff answered regarding his duties at each job. AR at 58–62. As part of that exercise, the VE classified Plaintiff's job at "Smokin'

15

Joe's Gold Express" as a data entry operator. AR at 62. Plaintiff did not object to that classification at the hearing or thereafter. In her decision, the ALJ found that although Plaintiff listed his job at "Smokin' Joe's" as a "staff accountant" on the work history in his application (AR at 270), she accepted the VE's assessment that the position was more accurately classified as a data entry operator. AR at 24–25. The ALJ inserted a footnote that stated: "The undersigned also notes that claimant's counsel had no objection to the vocational expert, and thus had no objection to her ability to properly classify occupations based upon reported job duties." AR at 25. The Court does not read this footnote as precluding Plaintiff from objecting to the specific classification, but rather as identifying counsel's acceptance of the VE's qualifications as an additional reason for relying upon her ability to properly classify Plaintiff's jobs.

## CONCLUSION

For the foregoing reasons, Plaintiff Joseph S.'s motion for judgment on the pleadings [ECF No. 15] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 18] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   March 31, 2025
         Rochester, New York

                                           _____
                                           HON. MEREDITH A. VACCA
                                           United States District Judge